**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| **Wilton Armetale, Inc., a/k/a WAPITA, Inc.,** | : | |
| | : | **Bky. No. 16-16779 PMM** |
| **Debtor.** | : | |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

The latest installment in this saga of a chapter 7 case is a dispute regarding David A. Eisenberg, the chapter 7 trustee (the "Trustee")'s Motion to Abandon Property of the Estate to the Debtor Pursuant to 11 U.S.C. §554(b) (doc. no. 190, the "Motion").[1]  In the Motion, the Trustee seeks permission to abandon common law causes of action for breach of contract and negligence against Wilton Armetale, Inc., a/k/a WAPITA, Inc. (the "Debtor" or "Wilton")'s former legal counsel.  These causes of action were originally brought in state court but were removed to this court as an adversary proceeding shortly thereafter, Adv. No. 17-372 (the "Lawsuit").  The Lawsuit has been pending for nearly three years.

In pressing the Motion, the Trustee asserts that the current cost/benefit analysis of pursuing this action, which has been litigated by the Debtor's special counsel Saltz Mongeluzzi Barrett & Bendesky ("Special Counsel"), leads to a conclusion that the Lawsuit is not worth the necessary time, energy, and cost required to continue.  The Trustee contends that the Lawsuit will yield, at best, an inconsequential benefit to creditors.

---

[1]     While styled as a pleading pursuant to 11 U.S.C. §554(b), the Motion actually seeks relief pursuant to 11 U.S.C. §554(a), the portion of the Code which permits a trustee to abandon property of the estate.

The Debtor's former legal counsel, Leisawitz Heller Abramowitch Phillips, P.C. ("the

Firm"), a defendant in the Lawsuit, and Gordon Brothers, one of the Debtor's largest creditors

(together with the Firm, the "Adverse Parties"), oppose the Motion. [2]  The Adverse Parties assert

both that pursuing the litigation will not cost the estate and that binding case law prohibits what

the Trustee seeks to do, which they claim is effectively to abandon the cause of action to a single

creditor (Artesanias Hacienda Real S.A. de C.V. ("AHR"), the owner of the Debtor).

For the reasons discussed below, I find the arguments of the Adverse Parties

unpersuasive.  The standard with regard to a trustee's abandonment of property pursuant to 11

U.S.C. §554 is well established, not onerous, and not affected by the case law on which the

Adverse Parties rely.  Here, the Trustee has met this (surmountable) burden by demonstrating

that his good faith business judgment led to the reasonable decision not to pursue the Lawsuit.

Therefore, the Motion will be granted.

## II. PROCEDURAL AND FACTUAL HISTORY

### A.  Events Leading to the Debtor's Bankruptcy

Prior to its bankruptcy, the Debtor was in the business of producing and selling

household tableware, supplying retailers such as Macy's, Belk, and Bed Bath & Beyond, among

---

[2]     The Debtor and AHR assert that the Adverse Parties lack standing to object because neither is a "party in interest." Doc. 195 at 4.  At the hearing on the Motion, after argument on this issue, I determined that the Adverse Parties are parties in interest with standing to object and participate.  Hearing at 40:38 - 42:28.

Although the Code does not define "party in interest," the phrase is usually held to apply to anyone whose monetary interests would be affected by the proceeding.  See e.g. In re Rosenberg, 414 B.R. 826, 1042 (Bankr. S.D. Fl. 2009), aff'd 472 F. App'x. 890 (11th Cir. 2012); In re River Bend-Oxford Assoc., 114 B.R. 111 (Bankr. D. Md. 1990).  See also In re Amatex, 755 F.2d 1034, 1042 (3d Cir. 1985) ("courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation").

The monetary interests of both the Firm and Gordon Brothers are directly at stake here; these parties have standing to argue their positions.

2

others.  The Debtor conducted business through a leased warehouse in Landisville, PA.  Its

administrative headquarters were at a property it owned, located at 903-905 Square St. in Mount

Joy, PA (the "Property").  The Debtor's former shareholder and director Ivan Jeffery ("Jeffery")

separately filed for bankruptcy in this Court on July 15, 2016.  See Bankr. No. 16-15037.

On April 20, 2015, pre-petition, the Debtor entered into a Loan and Security Agreement

(the "Agreement") with North Mill Capital, LLC ("North Mill").  Pursuant to the Agreement,

North Mill extended a line of credit to the Debtor in exchange for a $400,000.00 mortgage on the

Debtor's Property and a secured interest in the Debtor's assets (including receivables, inventory,

trademarks, and tradename).  As part of the Agreement between the Debtor and North Mill,

Jeffery agreed to a $250,000.00 junior participation agreement (the "Jeffery Agreement"), by

which Jeffery would receive at least a 6.25% rate of return on the line of credit extended by

North Mill to the Debtor.

In September 2015, pursuant to the Agreement and due to its financial difficulties, the

Debtor began pursuing a controlled liquidation plan.  With the help of the Firm, the Debtor

solicited buyers for its inventory.  North Mill helped fashion a deal by which it sold the Debtor's

inventory to Gordon Brothers, a liquidator which specializes in buying and selling assets of

distressed businesses.

On March 7, 2016 (still pre-petition), the Debtor's non real estate assets were sold to

Gordon Brothers for $725,000.00.  Doc. no. 45 at 25.[3]  Jeffery, with assistance from the Firm,

arranged for this sale of assets.  The Debtor contends that the Firm, at the direction of North Mill

and Jeffery, consented to a confession of judgment and application for sheriff's sale on the

Property.  Adv. no. 17-372, doc. 1-2 at 8.  The Firm admits that in March 2016 it advised North

---

[3]     AHR asserts that this sale ignored an "expression of interest" from Vagabond House to acquire the
Debtor's assets for approximately $1.25 million. See adversary case no. 17-197, doc. 9, at 12.

Mill that it would not be defending any litigation filed against the Debtor.  Adv. No. 17-372, doc.

no 5-2 at 4.  Due to the Debtor's failure to satisfy the terms of the Agreement, North Mill

obtained two confessed judgments against the Debtor in April 2016 in the amounts of

$606,361.48 and $405,000.00.  The Debtor alleges, in various formats and forms, that the

judgments of North Mill were obtained collusively and fraudulently by way of a conspiracy.

Specifically, the Debtor contends that North Mill arranged for the sale of the Debtor's assets to

liquidator Gordon Brothers by cutting Jeffery in for a "secret participation interest" of 20% of

net proceeds.  Doc. no. 9 at 35.  The next day, March 8, 2016, the Firm sought payment of

$10,500.00 in fees for work performed in connection with this transaction.  Adv. 17-197, doc. 9

at 17.

On April 26, 2016, the Debtor's supplier and largest secured creditor, AHR, obtained a

judgment lien in the amount of $920,658.17 on the Debtor's Property (the "AHR Judgment").

The AHR Judgment was the result of state court litigation, instituted in 2015, in which AHR

prevailed on a claim that the Debtor failed to deliver merchandise for which AHR paid.  See

Artesanias Hacienda Real S.A. de C.V. v. Wilton Armetale, Inc., et al., Civ. A. No. 15-6350.

As a result of the AHR Judgment, Jeffery was required to deliver his shares in the Debtor

to an AHR affiliate within three days.  The stock was moved into a company owned by AHR

called Mega Living.  AHR is, therefore, the current owner of the Debtor.  Doc. no. 45 at 29.

Following the delivery of Jeffery's stock, Mega Living terminated Jeffery's employment with

the Debtor.

This bankruptcy was filed by AHR as owner of the Debtor immediately prior to the

sheriff's sale of the Property (the Debtor's only remaining asset).

## B.  Events in the Bankruptcy Case

The Debtor filed for chapter 7 bankruptcy protection on September 26, 2016.  The next

day, on September 27, 2016, the Trustee was appointed.  Jeffery's bankruptcy estate and AHR

together hold approximately 98% of the asserted claims in this case.  See Claims Nos. 2, 10, &

11.[4]

On January 6, 2017, following a Motion to Sell Free and Clear by the Trustee, the parties

entered into a settlement agreement which defined the terms and conditions of the sale of the

Debtor's Property. Doc. nos. 66 and 67.  By way of this settlement agreement, AHR, the Trustee,

and North Mill agreed that North Mill would be paid $520,000.00 directly out of the sale

proceeds. Adv. 17-187, doc. 39 at 8.  As a result, the Property was sold to Square Deal 950, LLC

for $800,000.00 on January 6, 2017.

On March 20, 2018, the Trustee filed a (different) Motion to Abandon causes of action

regarding, among other things, fraudulent transfer claims against Gordon Brothers and Jeffery.

The Trustee asserted that "in light of the time required and cost likely to be incurred by the

Estate's professionals to assert such Claims and the difficulty and risks in asserting such Claims,

that such Claims are of inconsequential value and benefit to the Estate." (the "First

Abandonment Motion," doc. no. 134 at 2). The First Abandonment Motion was settled by

stipulation[5] among the Trustee, the Debtor, AHR, and Jeffery's chapter 7 trustee (Lynn Feldman)

(the "Settlement").  The Settlement states that all claims against both Gordon Brothers and its

affiliates and Jeffery for fraudulent transfer and related causes of action are abandoned by the

---

[4]      The Trustee's objections to the Proofs of Claims asserted by the estate of Jeffery were settled by stipulation
on January 10, 2018.  Doc. No. 117.

[5]      This Settlement was required by the March 20, 2018 agreement resolving the Debtor's Motion to Approve
Interim Distribution and Interim Application for Compensation. Doc. nos. 128 and 129.

Trustee to the Debtor.  Doc. no. 159 (entered June 6, 2018).  The professional liability and

breach of contract claims asserted by the Trustee's counsel against the Firm in adversary

proceeding 17-372 were specifically excluded from the Settlement.  Doc. no. 157 at 4.

The bankruptcy case and related adversaries were transferred from Judge Fehling to

Judge FitzSimon on January 23, 2019.  Upon the retirement of Judge FitzSimon, the matters

were transferred to the undersigned Judge on March 17, 2020.

### C.  The Motion

At the hearing on the Motion, which took place on April 28, 2020, Elizabeth Bailey, an

attorney at the law firm which serves as Special Counsel, testified.  The Adverse Parties, along

with a representative for the chapter 7 trustee in Jeffrey's bankruptcy argued against the Motion

and Counsel for the Trustee presented argument in favor.

The Motion seeks to abandon certain claims of the estate filed by Special Counsel against

the Firm and two of its lawyers.  The Trustee asserts that in light of mounting costs, the "net

benefits to the Estate of its pursuit of the Claims may be inconsequential to the Estate."  Motion

at 2.  If the lawsuit is abandoned, the Debtor– which may seek to pursue the litigation in its own

name – agrees to grant Special Counsel a claim against the recovery.  Motion at 3.

### D.  Underlying Adversary Proceeding Against the Firm

The underlying cause of action that the Trustee seeks to abandon is litigation by the

Trustee against the Firm and two of its attorneys- Charles J. Phillips and Eden R. Bucher

(collectively, the "Defendants").  See Adversary No. 17-372 (the "Adversary Proceeding").  The

Adversary Proceeding was originally filed on November 20, 2017 in the Court of Common

Pleas.  The Litigation was removed to this court by the Defendants on December 18, 2017.

The Adversary Proceeding states two causes of action against the Defendants: 1)

negligence/professional liability; and 2) breach of contract.  The Complaint alleges, *inter alia*,

that the Defendants breached their duty to the Debtor by representing Jeffery's interest to the

detriment of the Debtor, failing to insure that Wilton's assets were sold for full value, and failing

to defend Wilton's interests against creditor actions.  The Defendants' misdeeds allegedly led to

Wilton's sale of its assets and Property for below market rates.

On April 11, 2017, an Order was entered permitting the Trustee to retain Special Counsel

to prosecute this adversary proceeding against the Firm.  Doc. no. 77 in the main bankruptcy

case (the "Retention Order").  The Retention Order provides that Special Counsel would receive

one third of any recovery, "plus reimbursement of costs and expenses," subject to court approval.

Retention Order at 1.  The trustee's Application to Employ Special Counsel (doc. no. 75, the

"Application") specified that "in the event it is unsuccessful, [Special Counsel] will waive any

administrative claim for costs and expenses advanced in furtherance of the Claim."  Application

at 2.

On November 7, 2018, Judge FitzSimon granted the Defendants' Motion to Dismiss with

regard to Count II of the Adversary Proceeding but denied the Motion with regard to Count I.

Doc. no. 11 in A17-372.  The Defendants filed an Answer on December 11, 2018.

The Adversary Proceeding is currently stayed, pending the outcome of the Motion.

**E.  Adversary Proceeding 17-197**

The history and outcome of a related adversary proceeding, Artesanias Hacienda Real

S.A. de. C.V. v. North Mill Capital, LLC and Leisawitz Heller, adversary no. 17-197 (the "North

Mill Adversary"), is relevant to this discussion because the Adverse Parties argue that a ruling in

this adversary proceeding dictates the outcome of the Motion.

The North Mill Adversary was filed by AHR in the District Court on August 2, 2016.

The District Court granted the Defendants' initial Motion to Dismiss the North Mill Adversary

on December 16, 2016.  An Amended Complaint was filed on January 3, 2017.  The matter was

referred to the Bankruptcy Court on July 12, 2017.

The Amended Complaint in the North Mill Adversary alleges (based on the same nucleus

of facts that underly the Adversary Proceeding): 1) aiding and abetting a breach of fiduciary

duty; 2) conspiracy to breach fiduciary duty; 3) fraudulent transfer; 4) conspiracy for fraudulent

transfer; and 5) conspiracy to engage in commercially unreasonable disposition of Debtor's

assets.

Following oral argument, on December 6, 2018, Judge FitzSimon found that the North

Mill Adversary falls under the Court's "core" jurisdiction but dismissed the matter because she

found that the Plaintiffs lacked standing due to the fact that the chapter 7 trustee was the proper

party to bring these state law claims.  In re Wilton Armetale, Inc., 2018 WL 6440600 (Bankr.

E.D. Pa. Dec. 6, 2018), aff'd Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital LLC,

607 B.R. 189 (E.D. Pa. 2019), rev'd In re Wilton Armetale, Inc., --- F.3d ----, 2020 WL 4460000

(3d Cir. Aug. 4, 2020).

The Plaintiffs appealed Judge FitzSimon's ruling.

8

### F. Appeals of the Ruling in the North Mill Adversary

In August 2019, the District Court (Judge Smith) affirmed Judge FitzSimon's opinion and held that although the Bankruptcy Court had "related to" jurisdiction to determine the matter, AHR, a creditor, lacked standing to bring the alleged causes of action, which the estate could have brought on its own behalf.  Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital LLC, 607 B.R. 189 (E.D. Pa. 2019), rev'd In re Wilton Armetale, Inc., --- F.3d ----, 2020 WL 4460000 (3d Cir. Aug. 4, 2020) (the "District Court Opinion").

Earlier this month, the Third Circuit vacated and remanded the District Court Opinion, holding that:

- A creditor's right to bring a claim in bankruptcy court may properly be distinguished from a plaintiff's constitutional standing and should be characterized as a litigant's "*statutory* authority under the Bankruptcy Code." 2020 WL 4460000, at \*4 (emphasis in original).

- AHR maintains both constitutional standing and statutory authority to bring the claims against North Mill and the Firm.

- AHR has statutory authority to bring the claims at issue in the North Mill Adversary because the causes of action were both pursued by AHR pre-petition and abandoned post-petition by the Trustee. Once abandoned, the causes of action ceased to be property of the estate and thus may be pursued by AHR on its own behalf.

See In re Wilton Armetale, Inc., --- F.3d ----, 2020 WL 4460000 (3d Cir. Aug. 4, 2020) (the "Third Circuit Opinion").

### III. LEGAL STANDARD

### A.  The Standard Articulated By the District Court Does Not Apply Here

Before describing and applying the basis for determining the Motion, I must decide

which legal standard applies.  The parties disagree with regard to this question.

The Adverse Parties assert that the principles articulated by Judge Smith in the District

Court Opinion dictate the outcome of the Motion.  They point to the Opinion's language stating

that "a trustee cannot relinquish claims that belong to the estate for the benefit of a single

creditor."  607 B.R. at 210. [6]  Simply put, the Adverse Parties argue the District Court set forth a

standard that prohibits a trustee from abandoning a claim to one creditor which, they insist, is

precisely what the Motion contemplates.[7]

The Trustee, on the other hand, maintains that the facts and legal issues involved in the

District Court Opinion are fundamentally distinct from those here, rendering the ruling in that

matter inapposite.

---

[6]      Gordon Brothers also argues that the Third Circuit only permits abandonment of a claim where the trustee
"unreasonably declined" to prosecute or lacks adequate resources.  Hearing at 1:31:00 (citing District Court
Opinion, 607 B.R. at 210).

         The language relied on by Gordon Brothers does not refer to the standard by which a chapter 7 trustee may
abandon a cause of action to the debtor; rather, this portion of the District Opinion refers - quite distinctly - to the
conditions under which a court may authorize a creditors' committee to exercise *derivative standing* "in the Chapter
11 context."  607 B.R. at 209.  The two concepts – a cause of action abandoned by the trustee to the debtor and a
creditor's independent pursuit of standing on behalf of a trustee – are related but certainly not the same.  Gordon
Brothers fails to provide analysis or explanation to support its contention that this law applies to the facts at hand.

[7]      The premise of this argument is that the Lawsuit will be abandoned to a creditor, AHR, if the Motion is
granted.  That premise, however, has not been established and runs counter both to the default assumption that
property of the estate is abandoned to the debtor, not a secured creditor, 5 Collier on Bankruptcy ¶ 554.02 (16th Ed.
2020) ("Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are
treated as if no bankruptcy petition was filed."), and to the Adverse Parties' own acknowledgment that the Lawsuit
would be abandoned to the Debtor.  E.g., Response, doc. no. 192.

         The facts at issue in this dispute are different from those in the North Mill Adversary (which was decided
by the Third Circuit Opinion).  Here, the creditor seeking to pursue the abandoned claims did not own the causes of
action pre-petition.

I agree with the Trustee and hold that the legal standard imposed pursuant to 11 U.S.C.

§554 (and discussed below), rather than the holding of the District Court Opinion, applies.

The obvious reason that I cannot rely on the District Court Opinion is that it is no longer

good law; the Opinion was recently vacated by the Third Circuit Opinion.  I will nonetheless

provide a brief analysis regarding why the now overturned reasoning of Judge Smith in the

District Court is not applicable to our case, both because the parties' briefs were filed prior to the

issuance of the Third Circuit Opinion and because the reasoning exposes the misguidance of the

Adverse Parties' argument.

Preliminarily, and contrary to the contention of the Adverse Parties, the District Court did

not make a specific and binding determination about the conditions pursuant to which a chapter 7

bankruptcy trustee may abandon property of the estate.  In fact, the District Court noted that the

issue before the Court did *not* involve the requirements for abandonment pursuant to 11 U.S.C.

§554, the applicable Code section.  See 607 B.R. at 211 n.25 (finding that such a determination

was not necessary for adjudication and noting that "[i]t is unclear whether the circumstances

where such an abandonment action would be appropriate are present here . . . .").  The Adverse

Parties ignore this fact and appear agnostic as to how §554 affects the analysis.

Further evidence that the District Court Opinion cannot offer guidance is that the District

Court addressed not whether it is permissible or proper for a trustee to abandon a cause of action

– the issue before me – but, rather, what *effect* such abandonment has on a creditor's rights to

bring the abandoned lawsuit in its name alone.  The Adverse Parties obscure this distinction by

insisting that the standard for abandoning a cause of action is the same regardless of the result of

the abandonment.  See e.g., Gordon Brothers' Brief, doc. no. 202 at 3 ("the effect on a

bankruptcy estate of abandonment of a claim is the same regardless of the identity of the person

11

to whom the claim is to be abandoned"). This argument posits that I cannot distinguish the

District Court Opinion simply because the claim there was abandoned to a creditor whereas in

this case the cause of action would be abandoned to the Debtor. While this argument has certain

superficial appeal, in the end the point is irrelevant to this discussion. The District Court

Opinion is not distinguishable merely because it addresses a different procedural scenario.

Rather, the case is inapplicable because it neither sets forth nor even discusses the standard by

which a bankruptcy trustee may choose not to liquidate an asset of the estate for the benefit of

creditors.

Neither the statute nor any law cited by the Adverse Parties stands for the proposition that

the determination of whether a trustee may abandon property of the estate rests on where that

property ends up. See §554(a) (referring to the value of the property *to the estate*).

For all these reasons, I conclude that the rulings in the North Mill Adversary do not

control the outcome here.

### B. Standard for Abandonment Pursuant to Section 544

This brings me back to the Bankruptcy Code. The standard regarding abandonment of

estate property is set forth in 11 U.S.C. §554. It provides that a "trustee may abandon any

property of the estate that is burdensome to the estate or that is of inconsequential value and

benefit to the estate." 11 U.S.C. §554(a). This standard is disjunctive. See In re Neill, 1989 WL

1681501 (Bankr. S.D. Iowa Jan. 9, 1989). The estate's property includes pending lawsuits. See

In re Auto West, Inc., 43 B.R. 761, 763 (Bankr. C.D. Utah 1984). The purpose of allowing

abandonment is to protect the estate from the burden of having to administer property that will

not benefit unsecured creditors. In re Paolella, 79 B.R. 607, 609 (Bankr. E.D. Pa. 1987).

In order to abandon property, the bankruptcy trustee must demonstrate that he made: 1) a

business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the scope of

authority.  In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003), aff'd 112 F. App'x. 868 (3d Cir.

2004).  See also In re Malden Mills Indus., Inc., 303 B.R. 688, 701 (B.A.P. 1st Cir. 2004); In re

Fields, 2005 WL 2205787, at *10 (Bankr. C.D. Ill. Jul 27, 2005).  In deciding whether

abandonment should be allowed, a court's role is not to second guess the trustee, but to

determine if the trustee made a reasonable decision.  As one court put it:

> Fortunately, the Court is not required to consult tea leaves, chicken
> entrails, nor signs of the moon to determine the likelihood of
> success on the part of the trustee in any such litigation.  Instead,
> the Court is merely required to determine if the trustee has acted in
> an appropriate manner.

In re Fulton, 162 B.R. 539, 540 (Bankr. W.D. Mo. 1993) (noting that the business judgment test

applies to decisions to abandon).

Further, a trustee is given wide discretion in making the decision to abandon property.

First Nat'l Bank v. Lasater, 196 U.S. 115, 118-19 (1905); In re Cult Awareness Network, Inc.,

205 B.R. 575, 579 (Bankr. N.D. Ill. 1997) (noting that the trustee "need only demonstrate that he

has exercised sound business judgment in making the determination to abandon") (citing cases);

In re Interpictures, Inc., 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994) ("From the beginning of

modern bankruptcy law, the courts have uniformly held that a trustee's power to abandon

property is discretionary.  By adopting a policy of adherence to a trustee's decision, the courts

have placed the burden of proving an abuse of discretion of the trustee's action or inaction on

abandonment on the party seeking to make the trustee act." (citations omitted)).

As a starting point, the party requesting abandonment (usually, as here, the trustee) has

the burden of proof.  5 Collier on Bankruptcy ¶ 554.02 (16th Ed. 2020); see also In re Pilz

Compact Disc., Inc., 229 B.R. 630, 635 (Bankr. E.D. Pa. 1999).  However, the party opposing

the request that property be abandoned bears a reciprocal burden to show some likely benefit to

the estate; mere speculation about possible scenarios in which there might be benefit is not

sufficient.  Collier at ¶ 554.02; In re Blasingame, 598 B.R. 864, 871 (B.A.P. 6th Cir. 2019); In re

Apex Long Term Acute Care-Katy, L.P., 599 B.R. 314, 323 (Bankr. S.D. Tex. 2019); Fields,

2005 WL 2205787, at *10 (citing Cult Awareness).


## IV.  DISCUSSION

### A.  The Trustee Has Met His Burden

The Trustee asserts that the Lawsuit would at best yield inconsequential value for

creditors of the estate and therefore may and should be abandoned.  After examining the facts,

controlling case law, the parties' arguments, and the testimony and evidence presented at the

hearing, I conclude that the Trustee has met his burden of showing that little is to be gained by

forging ahead with the Lawsuit, the pursuit of which is inherently risky.  The Trustee's decision

to abandon this property is a reasonable business judgment which he has the discretion to make.

Therefore, the Motion will be granted.

The Adverse Parties do not argue that the Trustee failed to make a good faith business

judgment within his scope of authority; thus, three of the four factors for determining whether

property may be abandoned are not in dispute.  The dispute lies with the fourth factor; the

Adverse Parties assert that the Trustee's decision was not made on a reasonable basis.  They

argue that pursuit of the Lawsuit, even taking into account the costs, may well benefit creditors

and, therefore, that abandonment is not in the best interest of the Estate.

The facts, however, do not lend weight to the argument that a meaningful recovery to creditors is anything but speculative.  Initial disclosures filed in the Lawsuit report potential damages of $525,000.00.  Hearing at 58:49.[8]  This amount, of course, is neither a guaranteed nor even a likely amount that would be gained upon success.  It is a (presumably optimistic) estimate submitted by the Plaintiff at the outset of litigation.  Further, any benefit to the estate must be weighed against the cost of litigation.  To date, Special Counsel has spent approximately $39,000.00 pursuing this litigation on behalf of the Estate.  Hearing at 43:30-44:24.  Discovery is ongoing and, in order to proceed, counsel would need to employ a variety of expert witnesses (e.g., a liability expert and a damages expert), who would review documents and possibly testify at trial.  Hearing at 44:24-46:13.  These additional costs may amount to over $100,000.00.  Hearing at 46:13.  Pursuant to the Application, Special Counsel is entitled to a third of any recovery.  Further, upon distribution of the reward, the Trustee would be entitled to a commission.  See 11 U.S.C. §326(a).

Therefore, a rough, generous estimate is that the estate may, *if* the Lawsuit is successful, and once estimated fees and expenses have been deducted, receive approximately $124,050.00.[9]  Given that there are over $3.7 million in claims in this case, that figure represents a 3.4% recovery.[10]

---

[8]    The Debtor originally asserted that the Lawsuit was worth "more than $1 million."  Schedule A/B, doc. no 9 at 6.

[9]    This number is calculated by assuming a $350,000.00 recovery, subtracting $150,000.00 in expenses, subtracting a third of this amount (the amount to which Special Counsel is entitled) and then reducing this sum by $9,950.00, which is the approximate amount of commission to which the Trustee would be entitled.

      Trustee's counsel's fees, which have not yet been estimated, would further reduce this amount.

[10]    Special Counsel asserted at the hearing that AHR (the Debtor's largest secured creditor)'s pursuit of its own action against the Firm (Adversary 17-197) points to a conclusion that competing duplicative litigation is inefficient and ultimately more expensive.  Hearing at 50:50; 1:01:00.  This analysis, complicated by the fact that AHR and the Debtor are not the same entity, is not directly relevant to the question before me. (cont'd)

It is also entirely possible - perhaps even probable - that the Lawsuit will not be

successful or that it will yield so little that, once costs and fees are deducted, creditors will

receive no benefit from the extended and extensive litigation.  I must also consider the possibility

that the Trustee's doubts about the value of the litigation rest not merely on the analysis

described above but also on privileged knowledge about the merits of this matter, or lack

thereof.[11]  Critically, while an actual calculation of what the estate and its creditors would stand

to gain if the Lawsuit were continued by the Trustee is not possible, such an account is not

necessary.  The question is whether the Trustee, faced with the facts at hand, made a rational

business judgment that the benefit - if any - would be of *inconsequential value* to the estate.

The answer to this question is yes.

The Trustee's judgment to abandon this cause of action, given the risks and potential

reward, is reasonable.  Three years into the litigation, there is no compelling evidence that the

Lawsuit will provide meaningful recovery for creditors of the estate.  And litigation is both risky

– i.e., it may be a net loss – and painful, particularly where, as here, the matter is highly

contentious.

Further, the objectors have failed to meet their burden of production with regard to the

Motion.  That is, the Adverse Parties provide no evidence or argument to demonstrate that there

would *likely* be a benefit to the estate from the Lawsuit.  Rather, counsel argues that the fact that

the litigation is "not toxic" means it must be pursued.  Hearing at 1:27:00.  The Adverse Parties

---

(cont'd) I must make an independent judgment of what will benefit the bankruptcy estate, rather than a
global determination of the most efficient way to pursue this litigation.  See Neill, 1989 WL 1681501, at *1
(abandonment rests on a determination of the best interest of the estate and "*not* the interests of the debtor and
creditors").

And while recovery by AHR in A17-197 may reduce its claim in the bankruptcy, assuming so is too
tangential a factor on which to base the analysis of whether the Trustee should be permitted to abandon the Lawsuit.

[11]      At the hearing, Special Counsel could not testify about such privileged information.

further assert that Special Counsel's contingency fee agreement indicates that there is no

downside to the litigation.  See Doc. no. 203 at 3 ("It is not as if the bankruptcy estate is at risk

of losing more than it may receive."); see also hearing at 1:27:30.

These arguments are a further indication that the Adverse Parties misunderstand the

relevant standard.  As discussed, a trustee may abandon property of the estate, within his

discretion, that has no meaningful benefit to the estate.  Blasingame, 2018 WL 10323373, at *2

("The decision whether to abandon property of the estate is left to the trustee rather than court in

the first instance.") (citation omitted); In re Rasberry, 2009 WL 2921301, at *2 (Bankr. E.D.

Okla. Apr. 27, 2009) (court should defer to the trustee's judgment).  The Court cannot rely on

speculative information of value;

> Otherwise, trustees could certainly invent a scenario under which
> virtually all property could become valuable in the future and
> thereby defeat any motion to compel abandonment.  The
> bankruptcy court cannot gaze into a crystal ball and see the future.
> It can only consider the evidence before it.

In re Nelson, 251 B.R. 857, 861 (B.A.P. 8th Cir. 2000).

The evidence before me shows that the Trustee's decision to forego pursuit of risky and

uncertain litigation is reasonable.

### B.  The Effect of Abandonment

As discussed, Gordon Brothers insists that "disposition of . . . the Motion . . . requires[s]

determination whether abandonment of a claim to the Debtor is, in effect, an impermissible

abandonment for the benefit if [sic] a single creditor."  Doc. no. 192 at 3.  See also hearing at

1:32:40 and 1:40:00-1:41:00.  It argues that the Court cannot permit the Trustee to abandon a

claim if the net result is that only AHR – the Debtor's owner – benefits.[12]  See Brief, doc. no.

202 at 5.  The law relied on for this proposition is the District Court Opinion which, as discussed,

has been vacated by the Third Circuit.

The legal authority, in fact, is to the contrary and holds that once property is abandoned

(pursuant to and permissible by the standard set forth in §554), its whereabouts and status are

presumptively beyond the control of the bankruptcy court.  As a leading treatise explains:

> Upon abandonment under section 554, the trustee is divested of
> control of the property because it is no longer part of the estate.
> Thus, abandonment constitutes a **divesture of all of the estate's
> interests in the property**. Property abandoned under section 554
> reverts to the debtor, and the debtor's rights to the property are
> treated **as if no bankruptcy petition was filed** . . . In any event,
> property abandoned under subsection (c) (scheduled but not
> administered property) is deemed abandoned to the debtor. . .
> .**Usually, abandonment of property will end the court's
> jurisdiction to determine disputes concerning that property,
> unless the result of the dispute could have some effect on the
> bankruptcy case**. . . .

Collier at ¶ 554.02 (emphasis added).  See also  In re Dewnsup, 908 F.2d 588, 590 (10th Cir.

1990), aff'd  502 U.S. 410 (1992) (abandoned property is "*not* property administered by the

estate.") (emphasis in original); In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987) (bankruptcy

court lacked jurisdiction to adjudicate claims regarding abandoned property).  Because

abandonment has the effect of removing property from the bankruptcy estate, the Court's

jurisdiction - or lack thereof - is a primary and necessary question.  The bankruptcy court cannot

continue to adjudicate the matter prior to such a determination.

---

[12]      The Adverse Parties do not provide an explanation for their assumption that abandonment to the Debtor
will benefit the Debtor's owner, AHR.  See also footnote 7, supra.  The Trustee's Motion would have the effect of
abandoning property to the Debtor.  Therefore, the conclusion that it is AHR- not the Debtor itself- which will
benefit requires a separate analysis.

It is possible - though far from obvious - that pursuit of the Lawsuit by either the Debtor

or AHR (if permitted to substitute for the Debtor as Plaintiff) may impact the bankruptcy estate

and thus allow this Court to exercise its "related-to" jurisdiction.  However, the question of what

happens to the Lawsuit *post-abandonment* is not presently before me.[13]  The Adverse Parties

raise the issue of the future status of the litigation not as a specific request for relief, but only as a

basis on which to deny the Trustee the ability to abandon the property.  While my determination

of the Motion may lead to an inquiry among the parties regarding what the next steps will be, the

question of the legitimacy of those steps is not now ripe for adjudication.  This Opinion

determines only that the Lawsuit, because it is of inconsequential value, is property that may be

abandoned by the Trustee and that the lawsuit will revert back to its pre-bankruptcy status.  See

In re Bray, 288 B.R. 305, 307 (Bankr. S.D. Ga. 2001).

## V.  CONCLUSION

The central question in determining whether the Trustee should be permitted to abandon

a claim belonging to the estate is whether such decision falls within the bounds of reason and

good judgment; is the Trustee's assertion that pursuit of this cause of action will yield, at best,

value that is inconsequential to the estate plausible or is there competing, compelling evidence

that continuing the litigation will produce a meaningful benefit to creditors?

Here, despite the obfuscation of this issue by the introduction of tangential arguments, the

result is clear and rather simple.  The Trustee articulates that abandonment of the Lawsuit is

within his business judgment.  An analysis of the present facts shows that such a judgment is

reasonable.  The Adverse Parties fail to show otherwise.

---

[13]  As the Third Circuit noted, "the trustee lacks authority to decide who has the statutory authority to bring [abandoned] claims." Third Circuit Opinion at *6.

Therefore, the Trustee will be permitted to abandon this property.  An Order to this effect

will be entered.

Date: <u>August 25, 2020</u>

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**